[No. F051916. Fifth Dist. Dec. 20, 2007.]

In re ALEX U., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ALEX U., Defendant and Appellant.

## COUNSEL

Thea Greenhalgh, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GOMES, J.**—Sixteen-year-old Alex U. (Alex) admitted to the police that he sodomized his 13-year-old half brother about 20 times, twice had his half brother masturbate him, and once orally copulated and once masturbated his half brother during the two-year period before his father walked in on an act of sodomy on July 23, 2006. Alex admitted to the police that the sex acts occurred in his and his half brother's bedroom when no one was around. His half brother told the police that the sodomy was forcible and painful.

After the filing of a juvenile wardship petition, Alex admitted an allegation of continuous sexual abuse of a child. (Pen. Code, § 288.5, subd. (a); Welf. & Inst. Code, § 602, subd. (a).) At the dispositional hearing, the court found four circumstances in aggravation—great violence, planning, taking advantage of a position of trust, and engaging in violent conduct indicating a serious danger to society (Cal. Rules of Court, rule 4.421(a)(1), (8), (11) & (b)(1))—and two circumstances in mitigation—no prior record and voluntarily acknowledging wrongdoing at an early stage of the criminal process (Cal. Rules of Court, rule 4.423(b)(1), (3)). Finding that the circumstances in aggravation outweighed the circumstances in mitigation, the court committed him to the California Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ) for a theoretical maximum term of physical confinement of 16 years.[1] (Pen. Code, § 288.5, subd. (a); Welf. & Inst. Code, §§ 602, subd. (a), 731, subd. (a)(4).)

---

[1] "In this opinion we use the phrase, 'theoretical maximum term of physical confinement' because the 'actual term' is indeterminate and is governed by certain guidelines. (*In re Jovan B.*

## ISSUES ON APPEAL

Alex argues that on a record with neither an admission nor proof beyond a reasonable doubt of circumstances in aggravation the court violated *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] (*Cunningham*) and denied his federal constitutional rights to due process and equal protection by committing him to the DJJ for longer than the 12-year middle term the determinate sentencing law (DSL) authorizes for continuous sexual abuse of a child. Additionally, he argues that the order requiring that his parents reimburse the County of Tulare for the costs of his care and maintenance must be stricken since the court made no finding of ability to pay. The Attorney General argues that Alex forfeited his right to appellate review by not objecting at the dispositional hearing and that Alex's arguments are meritless. We will affirm the judgment.

## DISCUSSION

1. *Theoretical Maximum Term of Physical Confinement*

Alex argues that on a record with neither an admission nor proof beyond a reasonable doubt of circumstances in aggravation the court violated *Cunningham* and denied his federal constitutional rights to due process and equal protection by committing him to the DJJ for longer than the 12-year middle term the DSL authorizes for continuous sexual abuse of a child. The Attorney General argues the contrary.

Before we address the merits of the issues before us, we turn to the Attorney General's forfeiture argument. Since the issues Alex raises present questions of law affecting his substantial rights, we choose to address his arguments even though he did not object at the dispositional hearing. (Cf. *In re Sheena K.* (2007) 40 Cal.4th 875, 888 [55 Cal.Rptr.3d 716, 153 P.3d 282]; Pen. Code, § 1259.)

Alex argues that *Cunningham* "fundamentally changed" not only how an adult's maximum DSL term is calculated but also how a juvenile's theoretical maximum term of physical confinement is calculated. The lynchpin of his argument is a footnote in a 1993 California Supreme Court case commenting on "compelling indicia" of the Legislature's intent to create "a juvenile

(1993) 6 Cal.4th 801, 811, 816–818 [25 Cal.Rptr.2d 428, 863 P.2d 673].) In theory, there is no statutory minimum time of physical confinement before a juvenile offender can be released." (*In re Christian G.* (2007) 153 Cal.App.4th 708, 712, fn. 1 [63 Cal.Rptr.3d 215] (*Christian G.*).)

maximum confinement scheme which would remain permanently parallel" to the DSL. (*In re Jovan B., supra,* 6 Cal.4th at p. 816, fn. 10.) For two reasons, his argument is flawed.

■ First, Alex's argument incorrectly assumes that the Legislature's intent is determinative. Starkly limiting legislative intent, *Cunningham* overrode the DSL's grant of authority to the courts to impose the aggravated term after finding circumstances in aggravation by a preponderance of the evidence. "Because the DSL allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment," *Cunningham* held, brusquely brushing aside the DSL's requirement for "judge-determined DSL sentences to be reasonable" as "comforting, but beside the point." (*Cunningham, supra,* 549 U.S. at p. ___ [166 L.Ed.2d at p. 876, 127 S.Ct. at p. 870].)

■ Second, Alex's argument "weaves in and out of the juvenile and adult laws with considerable ease. He is not permitted to do so. There is no right to jury trial in juvenile proceedings. [Citation.] He cannot, at the same time, claim both the rights attendant to adult sentencing proceedings (*Cunningham*) while reaping the fruits attendant to juvenile proceedings (the opportunity to be released on parole years before an adult would be released)." (*Christian G., supra,* 153 Cal.App.4th at p. 713.)

The courts construe Welfare and Institutions Code section 731, subdivision (c) to confer on the court the discretion not only to impose a theoretical maximum term of physical confinement equal to an adult's maximum period of imprisonment (the DSL's aggravated term) for the identical offense—without requiring the court to follow the DSL's requirements for the imposition of the middle term in the absence of circumstances in aggravation or circumstances in mitigation—but also to impose a shorter theoretical maximum term of physical confinement on the basis of the facts and circumstances of the case.[2] (*Christian G., supra,* 153 Cal.App.4th at p. 714, citing *In re Jacob J.* (2005) 130 Cal.App.4th 429, 435, 437–438 [30

---

[2] Welfare and Institutions Code section 731, subdivision (c) (formerly subd. (b)) provides: "A ward committed to the Division of Juvenile Facilities may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment that could be imposed upon an adult convicted of the offense or offenses that brought or continued the minor under the jurisdiction of the juvenile court. A ward committed to the Division of Juvenile Facilities also may not be held in physical confinement for a period of time in excess of the maximum term of physical confinement set by the court based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the juvenile court, which may not exceed the maximum period of adult confinement as determined pursuant to this section. This section does not limit the power of the Board of Parole Hearings to retain the ward on parole status for the period permitted by Section 1769." Statutory amendments during the pendency of Alex's appeal have no impact on the issues before us. (Stats. 2007, ch. 175, § 19, ch. 257, § 2.)

Cal.Rptr.3d 255], and *In re Sean W.* (2005) 127 Cal.App.4th 1177, 1188 [26 Cal.Rptr.3d 248]; Pen. Code, § 1170, subd. (b); Welf. & Inst. Code, § 726, subd. (c).) The broad scope of that discretion mirrors " 'the purposes of the juvenile system, which include the protection of the public as well as the rehabilitation of the [ward].' " (*Christian G., supra,* 153 Cal.App.4th at p. 715, citing *In re Carlos E.* (2005) 127 Cal.App.4th 1529, 1542 [26 Cal.Rptr.3d 551].) "A contrary interpretation of the statute would ignore the distinction between the determinate sentencing law, which provides for fixed terms designed to punish, and the juvenile justice system, which provides for indeterminate terms designed to rehabilitate." (*Christian G., supra,* 153 Cal.App.4th at p. 715.)

■ Proof beyond a reasonable doubt of each element of a crime is a constitutional right of adults and juveniles alike just as proof by a preponderance of the evidence is a constitutionally sufficient standard for revocation of adult and juvenile probation alike. (*In re Eddie M.* (2003) 31 Cal.4th 480, 487, 503–504 [3 Cal.Rptr.3d 119, 73 P.3d 1115] (*Eddie M.*), citing *In re Winship* (1970) 397 U.S. 358, 368 [25 L.Ed.2d 368, 90 S.Ct. 1068].) Those standards of proof apply at the jurisdictional stage of a criminal delinquency proceeding. (*Eddie M., supra,* at p. 487.) "Less exacting rules govern disposition," however. (*Ibid.*) Alex argues that proof beyond a reasonable doubt is a due process requirement for the court to calculate the theoretical maximum term of physical confinement at the dispositional phase. To the contrary, the juvenile court has broad discretion to do so. (*In re Asean D.* (1993) 14 Cal.App.4th 467, 473 [17 Cal.Rptr.2d 572].) Only on a showing of an abuse of discretion by application of the substantial evidence standard of review will the appellate court disturb the judgment. (*In re Teofilio A.* (1989) 210 Cal.App.3d 571, 579 [258 Cal.Rptr. 540]; *In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395 [234 Cal.Rptr. 103].) Understandably, Alex does not ask that we do so by that standard of review.

■ " 'Any parallel between the adult felon and the juvenile delinquent who have violated the same penal statute ends at the point of beginning of two separate, distinct punishment/rehabilitation statutory schemes. The commitment of the youth, processed through the juvenile court, to the [DJJ] for the maximum period under Welfare and Institutions Code section 731 is in no way the equivalent of the commitment of the adult to prison for the same crime for the upper term based upon aggravation factors. [¶] When the juvenile is committed for the maximum period, he [or she] is in fact being committed for an indeterminate period. The adult sent to prison for the upper "term prescribed" will be confined for that specific period less any behavior-performance credits. [Citation.] At the heart of the [DSL] is the concept of a fixed term. [¶] In contrast, to the juvenile, the "maximum" term is simply the outside time limit for a statutory program aimed directly at rehabilitation.' "

(*Christian G., supra,* 153 Cal.App.4th at p. 715, quoting *In re Robert D.* (1979) 95 Cal.App.3d 767, 774–775 [157 Cal.Rptr. 339].)

■ With commendable candor, Alex acknowledges that the court considered the facts and circumstances of his case in calculating his theoretical maximum term of physical confinement. (Cf. Welf. & Inst. Code, § 731, subd. (c).) Even so, with neither an admission nor proof beyond a reasonable doubt of circumstances in aggravation in the record, he argues that his commitment to the DJJ for a 16-year term—the same length as the DSL's aggravated term for continuous sexual abuse of a child—denied his federal constitutional right to equal protection since the DSL's 12-year middle term was the longest term a similarly situated adult could have received without proof beyond a reasonable doubt of circumstances in aggravation.

■ The constitutional guarantee of equal protection of the laws does not require uniform operation of the law as to people who are not in like circumstances. (*People v. Romo* (1975) 14 Cal.3d 189, 196 [121 Cal.Rptr. 111, 534 P.2d 1015]; *In re Robert D., supra,* 95 Cal.App.3d at p. 777.) The commission of a crime is the only point in common between a ward committed to the DJJ and an adult sentenced to prison. (*In re Robert D.,* at p. 777.) Since the statutory scheme and case authority "not only justify but demand a differential treatment approach for youths," Alex suffered no denial of equal protection. (*Id.* at p. 778; cf. *In re Charles C.* (1991) 232 Cal.App.3d 952, 958–960 [284 Cal.Rptr. 4].)

### 2. *Order for Costs of Care and Maintenance*

Alex argues that the order requiring his "parents to reimburse the County of Tulare for the costs of care and maintenance in the amount of $150.00" per month must be stricken since the court made no finding of ability to pay. The Attorney General argues that Alex has no standing to challenge the order.

■ Only an aggrieved party has the right to appeal. (Code Civ. Proc., § 902.) An aggrieved party is one "who has an interest recognized by law in the subject matter of the judgment and whose interest is injuriously affected by the judgment." (*Winter v. Gnaizda* (1979) 90 Cal.App.3d 750, 754 [152 Cal.Rptr. 700], italics omitted.) Since the order to reimburse the county for the costs of Alex's care and maintenance requires his parents, not him, to pay, and imposes no burden on him, he has no standing to challenge the order on appeal. (*In re George B.* (1991) 228 Cal.App.3d 1088, 1094 [279 Cal.Rptr. 388].)

## DISPOSITION

The judgment is affirmed.

Cornell, Acting P. J., and Dawson, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 27, 2008, S159886. George, C. J., and Corrigan, J., did not participate therein.